**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING**

| | |
|---|---|
| DOUG BRIGGS, individually and as Personal Representative of THE ESTATE OF BARBARA DREYFUSS,<br><br>Plaintiff,<br><br>vs.<br><br>LIFE CARE CENTERS OF AMERICA, INC., a foreign corporation,<br><br>and<br><br>LAKE VUE OPERATIONS, LLC, a foreign limited liability company,<br><br>and<br><br>TODD FLETCHER, individually,<br><br>and<br><br>ELLIE BASHAM, individually,<br><br>Defendants. | NO.<br><br>**COMPLAINT FOR DAMAGES** |

COMES NOW the Plaintiff, Doug Briggs, by and through his undersigned attorneys of record, Nelson Boyd, PLLC, and asserts as follows:

COMPLAINT FOR DAMAGES – 1

## I. PARTIES

1.1 Plaintiff Doug Briggs resides in King County, Washington. Doug has been appointed the personal representative of the estate of Barbara Dreyfuss.

1.2 Defendant Life Care Centers of America, Inc. (LCC) is a foreign corporation doing business in Washington as Life Care Center of Kirkland (LCCK). Its headquarters are located in Tennessee.

1.3. Defendant Lake Vue Operations, LLC (Lake Vue) is a foreign limited liability company. It manages LCCK. Its headquarters are in Tennessee.

1.4 Defendant Ellie Basham is the Executive Director of LCCK and a Washington resident.

1.5 Defendant Todd Fletcher is the Vice President of Western Operations of LLC and a Washington resident.

## II. JURISDICTION AND VENUE

2.1 LCCK is located in King County, Washington. Jurisdiction is proper in this Court under RCW 4.12.020(3) and 4.12.025; RCW 2.08.010; and RCW 4.20 *et. seq.*

2.2 Venue is proper in the King County Superior Court pursuant to RCW 4.12.025.

## III. FACTS

3.1 On January 21, 2020, the United States identified its first case of COVID-19 in Washington State. Since the first case was in neighboring Snohomish county, Defendants and their Kirkland, WA facility were immediately put on high alert.

3.2 On February 10, 2020, Defendants began discouraging visitors from coming to Life Care Center of Kirkland to due to a spike in respiratory illness at the facility, which they incorrectly assumed to be seasonal influenza. Defendants were required to implement

Influenza Outbreak Management protocols at the first signs of multiple respiratory illnesses among staff and/or residents. (https://www.cdc.gov/flu/pdf/professionals/interim-guidance-outbreak- management.pdf ).

3.3     Despite their knowledge of the increase in illnesses in their facility, and their knowledge of their duty to address this increase, Defendants chose not to file a report with authorities disclosing the increase until 17 days later; King County first received notice from Defendants of an increase in respiratory illnesses as the subject facility on February 27, 2020.

3.4     The individual defendants shared responsibility for decision-making at LCCK.

3.5     Defendants served a population of residents at LCCK who suffered from various health problems. Some were immuno-compromised.

3.6     Defendants had an obligation to make reasonable efforts to prevent, identify, and mitigate viral outbreaks at LCCK.

3.7     Defendants failed to effectively plan for a viral outbreak prior to the emergence of COVID-19 and failed to hold consistent or effective quality-assurance and performance-improvement (QAPI) meetings in 2019- which are intended to flag disease and viral outbreaks.

3.8     Managers at the subject facility held quality-assurance meetings on January 27, 2020 and February 19, 2020. However, they did not raise COVID-19 concerns at either meeting.

3.9     Upon information and belief, the February 19, 2020 monthly QAPI meeting minutes under the nursing section falsely noted: "no reports of infection concerns at the facility;" In reality, on or about that date, there were at least three residents with unusual respiratory illnesses that involved pneumonia, cough, and fever. (Dept. of Health and Human Services/CMS Survey completed 3/16/2020).

3.10     Upon admission, the entity Defendants represented to Doug Briggs and Barbara Dreyfuss that LCCK followed best practices in the industry that would allow it to minimize potential sources of infection for residents like Barbara Dreyfuss.

3.11     Based upon those representations, Doug Briggs and Barbara Dreyfuss decided that Barbara should move into LCCK.

3.12     Barbara Dreyfuss moved into and resided at LCCK.

3.13     Defendants failed to follow best practices to minimize potential sources of infection for immune-compromised residents like Barbara Dreyfuss.

3.14     Defendants failed to reasonably respond to COVID-19 as it emerged as a threat to public health and particularly to people in certain high-risk groups, and failed take steps to prevent residents from becoming infected.

3.15     Defendants chose to operate their business without identifying and responding to clear warning signs, clearly present as early as February 12, 2020, that staff and/or residents were infected with COVID-19 at LCCK and failed to implement measures to prevent its spread. (Dept. of Health and Human Services/CMS Survey completed 3/16/2020).

3.16     Defendants failed to take reasonable steps to ensure that residents infected with COVID-19 did not spread it to other residents.

3.17     Defendants failed to take reasonable steps to ensure that residents infected with COVID-19 received proper medical treatment.

3.18     Defendants did not take reasonable steps to contact public officials and seek assistance in responding to COVID-19 infections within LCCK.

3.19     Defendants did not take reasonable and timely steps to quarantine either ill residents

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

or the facility.

3.20 On February 27, 2020, Barbara began experiencing respiratory problems and was transported to the emergency room at Evergreen Hospital.

3.21 On March 1, 2020 Barbara passed away from complications caused by COVID-19.

3.22 On March 16, 2020, CMS and Washington State Department of Social and Health Services ("DSHS") inspected the subject facility. CMS determined[1] that the subject facility no longer met requirements for participation as a provider of services in the Medicare program established under Titles XVII and XIX of the Social Security Act.

3.23 Furthermore, CMS found the most serious deficiencies at the subject facility to be widespread, thereby constituting an Immediate Jeopardy ("IJ") to resident health and safety.

3.24 Specifically, CMS concluded that Defendants were in violation of the following regulations (among others):

    a. 42 C.F.R. 483.24 – F 684 – S/S/: L – Quality of Care;
    b. 42 C.F.R. § 483.30(d) – F 713 – S/S: L – Physician for Emergency Care, Available 24 Hours;
    c. 42 C.F.R. § 483.80(b)(1)-(4)(c) – F 880 – S/S: L – Infection Prevention & Control;
    d. 42 C.F.R. § 483.70(d)(1)(2) – F0837 – S/S: F – Governing Body;
    e. 42 C.F.R. § 483.70(h)(1)(2) – F0841 – S/S: F – Responsibilities of Medical Director;
    f. 42 C.F.R. § 483.20(f)(5), 483.70(i)(1)-(5) – F0842 – S/S: F – Resident Records -Identifiable Information; and
    g. 42 C.F.R. § 483.75(a)(2)(h)(i) – F0865 – S/S: F – QAPI Program/Plan, Disclosure.

3.25 CMS fined Defendants $13,585 per day effective February 12, 2020 and continuing

---

[1] Department of Health and Human Services/CMS survey completed 3/16/2020; "On 03/13/2020 near 3:45 PM, the Executive Director was informed of an immediate jeopardy situation related to failed infection control surveillance and PNA outbreak. With began on 2/12/2020. In addition to the failure to report the outbreak to the Department of Health timely, the facility needs to ensure once it identifies outbreaks, it will timely notify the Department of Health and get guidance and assistance."

COMPLAINT FOR DAMAGES – 5

through March 27, 2020, for a total of $611,325.00.

## IV. VIOLATION OF THE VULNERABLE ADULTS ACT

4.1	Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

4.2	Defendants, directly and by and through their employees and agent health care providers who were, at all times material hereto, acting within the course and scope of their employment and agency for the Defendants, failed to provide the services necessary to maintain the physical and mental health of Barbara Dreyfuss, a vulnerable adult, and failed to avoid or prevent physical and mental harm and pain to Barbara Dreyfuss in violation of the Abuse of Vulnerable Adults statute, RCS 74.34 *et. seq.*

4.3	Defendants performed acts or omissions that demonstrated a serious disregard of consequences of such a magnitude as to constitute a clear and present danger to Barbara Dreyfuss's welfare and safety. Defendants also, on a routine basis, abandoned, abuse, and neglected Barbara Dreyfuss, a vulnerable adult, residing in a facility as defined in this statute.

4.4	Defendants' conduct directly and proximately caused the injuries to and the ultimate death of Barbara Dreyfuss as pled herein.

## V. NEGLIGENCE

5.1	Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

5.2	The negligence of Defendant's as outlined above was a proximate cause of Barbara Dreyfuss's injuries and ultimate death resulting from neglect and negligence.

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

## VI. FRAUD, FRADULENT CONCEALMENT AND NEGLIGENT MISREPRESENTATION

6.1     Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

6.2     In addition to the wrongful conduct described above, Defendants engaged in a continuing and routine practice of fraud and/or negligence misrepresentation which were a proximate cause of Barbara Dreyfuss's injuries, damages, and death.

6.3     More specifically, Defendants engaged in fraud by concealing, suppressing and failing to disclose material facts when:

   a.   Defendants were aware and knowledgeable of such material facts;

   b.   Defendants had a duty to disclose such facts;

   c.   Defendants knew that Barbara Dreyfuss and Doug Briggs were unaware of the same;

   d.   Defendants knew that Barbara Dreyfuss and Doug Briggs did not have an equal opportunity to discover the truth; and

   e.   Defendants' concealment, suppression, and failure to disclose these material facts was intended to induce Barbara Dreyfuss and Doug Briggs to take or refrain from taking some action, to wit: to keep Barbara Dreyfuss at the Life Care Center in Kirkland in an environment, and under the care of individuals and entities, dangerous to her health and safety.

6.4     The Facility Infection Preventionist Nurse was interviewed on March 7, 2020 by State and Federal surveyors, wherein she acknowledged that she had concerns when she saw a cluster of residents with respiratory infections occurring on or around February 12, 2020. She

NELSON BOYD, PLLC
601 Union Street, Suite 2600
Seattle, Washington 98101
(206) 971-7601

discussed these concerns with the physician extender (physician's assistant or nurse practitioner) working under the direct supervision of the Facility Medical Director. No one instructed the Infection Preventionist Nurse to report these concerns to the Department of Health prior to February 26, 2020. Despite her concerns, neither she, nor the Medical Director or the physician extender, chose to notify the Department of Health for two weeks. The Infection Preventionist Nurse also chose not to review the facility policy regarding outbreaks. (Dept. of Health and Human Services/CMS Survey completed 3/16/2020). Defendants chose to conceal and suppress the acts and omission described above to deceive Barbara Dreyfuss, her responsible parties, and her son, Douglas Briggs. Such conduct was intended to hide the ongoing danger and threat to Barbara Dreyfuss's health and safety, thereby protecting Defendants' assets, reputations, and revenue system.

6.5     At all material times, Defendants owed a duty to Barbara Dreyfuss, her responsible parties, and her son to disclose material facts that would have affected the decision to keep Barbara Dreyfuss at the Life Care Center of Kirkland.

6.6     This duty arose from the confidential and/or fiduciary relationship between Defendants and Barbara Dreyfuss and Doug Briggs which existed by virtue of reasons, including, but not limited to:

   a.   Barbara Dreyfuss required skilled care and treatment from a professional and licensed healthcare provider as well as custodial care and assistance with her activities of daily living;

   b.   The nursing home represented it was a professional and licensed healthcare provider that represented it could provide Barbara Dreyfuss with the necessary

                level of care, services, and treatment she required; and

      c.      Barbara Dreyfuss, her responsible parties, and her son, Doug Briggs, depended solely upon the nursing home to meet her medical, nursing, and health care needs.

6.7     Moreover, at all material times, Defendants' knowledge of the specific care, responsibilities, and duties imposed by nursing home statutes, laws, regulations, and minimum standards was vastly superior to that of Barbara Dreyfuss and Doug Briggs. Not only was the discharge of the foregoing duties the sole responsibility of Defendants, but Defendants held themselves out to Barbara Dreyfuss and Doug Briggs and to the State and Federal licensing and certification authorities as being qualified, knowledgeable, skilled, and trained to provide resident care prescribed by law and professional standards.

6.8     This information was uniquely within the knowledge and understanding of Defendants and underscored the fiduciary relationship existing between Barbara Dreyfuss and Defendants, as well as the fiduciary duty owed by Defendants to disclose to Doug Briggs: a) any threat to Barbara Dreyfuss's health and safety, and b) any dangerous practice or condition at Life Care Center of Kirkland which posed a threat to her health and safety.

6.9     On an ongoing basis before and after Barbara Dreyfuss's contraction of COVID-19, Defendants suppressed, concealed, and covered-up material facts, described below, in order to hide from residents such as Barbara Dreyfuss, the ongoing danger and threat to residents' health and safety. Such suppression, concealment, and failure to disclose was intended to induce Barbara Dreyfuss and Doug Briggs to keep Barbara Dreyfuss at Life Care Center of Kirkland and discourage Plaintiff from removing Barbara Dreyfuss from the facility, thereby

protecting Defendants' assets, reputation, and revenue stream.

6.10    Defendants' ongoing fraudulent suppression, concealment, and failure to disclose these material facts and their material consequences detailed herein was a direct and proximate cause of Barbara Dreyfuss's catastrophic injuries, subsequent complications, and ultimate death.

## VII.    WRONGFUL DEATH: RCW 4.20.010

7.1    Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

7.2    Defendants' acts, omissions and misrepresentations were a proximate cause of Barbara Dreyfuss contracting COVID-19 and death resulting therefrom.

7.3    As a direct and proximate result of Barbara Dreyfuss's death, Plaintiff and his siblings lost his love, affection, companionship, emotional support, care and guidance.

## VIII.    SPECIAL SURVIVAL: RCW 4.20.060

8.1    Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth herein.

8.2    Defendants' acts, omissions and misrepresentations were a proximate cause of Barbara Dreyfuss contracting COVID-19 and death.

8.3    As a direct and proximate result of defendants' acts, omissions and misrepresentations, Barbara Dreyfuss experienced pain, suffering, emotional distress, humiliation and knowledge of her impending death.

## IX.    WASHINGTON CONSUMER PROTECTION ACT: RCW 19.86 *et. seq.*

9.1    Plaintiff incorporates the foregoing paragraphs of this Complaint as if fully set forth

herein.

9.2 Defendants represented that they would utilize best practices in terms of identifying, mitigating the risk and responding to infectious diseases. Defendants promised to provide high-quality care and services to Barbara Dreyfuss.

9.3 Defendants failed to live up to their representations.

9.4 The failure to live up to those representations constitutes unfair or deceptive acts or practices prohibited by the Washington Consumer Protection Act ("WCPA").

9.5 Defendants' unfair or deceptive acts or practices occurred in the conduct of their trade or business.

9.6 Defendants' unfair or deceptive acts or practices affected the public interest.

9.7 As a direct and proximate result of the defendants' unfair or deceptive acts or practices, Plaintiff and Barbara Dreyfuss suffered financial loss as a result of Barbara Dreyfuss not receiving the care for which paid for.

## X. CHOICE OF LAW/FOREIGN LAW

10.1 There is an actual conflict between the remedies available under Washington and Tennessee law regarding the fraud claim asserted by Plaintiff.

10.2 The entity defendants' corporate headquarters are located in Tennessee.

10.3 Responsibility for planning how to deal with infectious diseases, generally, and COVID-19 specifically, occurred in Tennessee.

10.4 It was foreseeable to the entity defendants that facilities like LCCK would have to address infectious diseases.

10.5 Key decisions regarding the manner in which infectious diseases were identified and

COMPLAINT FOR DAMAGES – 11

addressed were made in Tennessee.

10.6 The systems that failed to timely identify and address the implications of COVID-19 were designed in and implemented from Tennessee.

10.7 The decision not to timely alert and seek assistance from public entities was made in Tennessee.

10.8 In this case, where there are entity defendants headquartered in Tennessee and no entity defendants headquartered or incorporated in Washington, the interests of Tennessee, in deterring its corporations from engaging in fraudulent conduct, are greater than the interests in Washington of limiting the exposure of Washington businesses to punitive damages.

10.9 Plaintiff seeks punitive damages for all applicable conduct by the entity defendants including but not limited to the fraud they committed.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests a judgement against Defendants:

(a) Awarding Plaintiff general damages and special damages in an amount to be proven at trial;

(b) For Monetary Judgment in an amount sufficient to provide compensation for the damages suffered as a result of Barbara Dreyfuss's injuries, losses under the wrongful death and survival statutes and for all damages and remedies available under RCW Ch. 74.34 and RCW Ch. 19.86;

(c) Awarding Plaintiff reasonable attorney's fees and costs as available under law;

(d) For Punitive Damages;

(e) Awarding Plaintiff any and all applicable interest on the judgment; and

(f) Awarding Plaintiff such other and further relief as the Court deems just and proper under the circumstances of this case.

Respectfully submitted this 7th day of April, 2021.

**NELSON BOYD, PLLC**

<u>s/Jeffrey D. Boyd</u>
Jeffrey D. Boyd, WSBA #41620
Deborah M. Nelson, WSBA #23087
601 Union Street, Ste 2600
Seattle, WA 98101
Phone: (206) 971-7601
Fax: (206) 577-5035
boyd@nelsonboydlaw.com
nelson@nelsonboydlaw.com
Attorneys for Plaintiff

*(subject to admission PHV):*

***THOMAS LAW OFFICES, PLLC***

*Tad Thomas, (KY 88577)*
*Brian M. Jasper (KY 94428)*
*9418 Norton Commons Blvd., Ste. 200*
*Prospect, Kentucky 40059*
*Telephone: (502) 473-6540*
*Tad@thomaslawoffices.com*
*Brian.jasper@thomaslawoffices.com*